## Mary Vail, Appellee, v. North American Union, Appellant.

### Gen. No. 5,954.

1. EVIDENCE, § 48*—*when burden of proof on defendant.* Where a defendant pleads the general issue and special defenses, the burden of proving the special defenses is on defendant.

2. INSURANCE, § 891*—*when statement of attending physician as to cause of death competent evidence.* In an action to recover upon a certificate of insurance issued by a beneficiary society, a sworn statement as to the cause of the death by the physician attending the deceased, made in response to interrogatories made by the society and filed with the proofs of death, is competent evidence for defendant.

3. INSURANCE, § 842*—*when alcoholism defense to action on certificate of life insurance.* Where the laws of a beneficiary society provide that any member who shall use intoxicating liquors to such excess as to endanger his life or materially to affect the risk on his life, shall forfeit all benefits from the society, and if his death is caused by or due directly or indirectly to such use of intoxicating liquors, all claims which his beneficiaries might otherwise have had upon the society shall be null and void, in order that the use of such liquors by deceased shall be a defense, it must appear that his death was caused directly or indirectly by such use of intoxicating liquors as endangered his life or materially affected the risk upon it.

4. INSURANCE, § 890*—*what effect to be given statement in proof of death.* The beneficiary in a certificate of life insurance, issued by a beneficiary society, in making the proofs of death signed a form which contained the statement that the proofs had been executed at her special instance and request and that the statements therein were adopted by her and agreed to as the basis of the claim. It was *held* that the statement was not to be construed as a waiver of claim and an acknowledgment that the claim is void, but should be liberally construed in her favor.

5. INSURANCE, § 907*—*when alcoholism of insured not established.* Evidence as to excessive use of intoxicating liquor by insured examined and *held* to be sufficient to warrant a finding by the jury in favor of plaintiff, in action on insurance certificate.

Appeal from the Circuit Court of Lee county; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the October

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

term, 1913.   Affirmed.   Opinion filed July 31, 1914.   Rehearing granted and opinion filed January 6, 1915.

ARTHUR G. HARRIS and WILLIAM H. WINN, for appellant.

HENRY S. DIXON and GEORGE C. DIXON, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

The American Stars of Equity, a beneficiary society, issued a certificate on the life of John Vail, payable to his wife, Mary Vail. He died and proofs of death were furnished and the claim was not paid. Thereafter the business of the American Stars of Equity was transferred to the North American Union, and the latter assumed the liabilities of the former. Thereafter, Mrs. Vail sued the North American Union upon said certificate and filed a proper declaration. Defendant filed an amended plea of the general issue, with an amended notice of two special defenses. There was a jury trial. Plaintiff introduced the certificate and the proofs of death and proved the assumption of the liabilities of the former society by the defendant and the amount due and made a case under the general issue, and there was no contrary evidence under the general issue. There was a verdict for plaintiff for $781.39, and answers to special interrogatories requested by defendant. These questions were whether, at the time Vail made application for membership, he was an habitual user· of spirituous liquors, whether prior to such application he had been an immoderate user of spirituous liquors, and whether his death was due directly or indirectly to the excessive use of intoxicating liquors. These questions were answered ''No.'' A motion by defendant for a new trial was denied and plaintiff had judgment and defendant appeals. The burden was upon defendant

to prove its special defenses, and the only question on this subject is whether the jury should have found the other way on either of those defenses.

The laws of the Order provided that any person who obtained membership therein by false statements or misrepresentations in his application for member-ship should forfeit all benefits which he or his bene-ficiaries might otherwise be entitled to recover. In the application by Vail for this certificate were the following questions to which he made the following answers:

"Do you use any spirituous or distilled liquors? No.

"Have you ever used any spirituous liquors? Yes.

"To what extent? Moderate.

"State which you have used. Whiskey."

The amended notice under the general issue alleged that these were false statements and misrepresenta-tions and that John Vail did at the time use spirituous and distilled liquors and had prior thereto used such liquors immoderately. The application was made on March 14th, and the certificate was issued on March 16, 1905.

Defendant proved that in 1902 Vail had pleaded guilty to the charge of drunkenness on two or more occasions and had pleaded guilty to a like offense on two or more occasions in 1906. Various witnesses tes-tified that they had seen him intoxicated at different times. They did not give any date, and each may have been testifying to a different event or several of them may have been testifying to the same occasion. No one testified that this was in the year 1905. Plaintiff produced witnesses who were closely acquainted and associated with Vail in 1905, by whom it was shown that he was not drinking at all in that year. Defend-ant introduced a bill for divorce, filed by plaintiff against her husband on August 28, 1908, wherein she stated under oath that she was married to Vail in

1882 and that a few years after said marriage he commenced the excessive use of intoxicating liquors, and that for more than two years last past he had been guilty of habitual drunkenness. Two years before the filing of this bill would be August 28, 1906, and this does not prove that he was in the habit of using intoxicating liquors in March, 1905. Many witnesses testified that Vail was a hard-working laboring man, whose services were worth more and brought more than those of an ordinary laboring man, and that he sometimes drank liquor. Many of them testified that he never drank it to excess to their knowledge. Some of them had seen him intoxicated on remote occasions. By his application he revealed to the Order that he had used whisky in moderation. Obviously what would be such moderation is a matter upon which people would differ. It is worthy of note that the laws of the Order provided that, upon credible information being received that a member is using intoxicating liquors to such an excess as to endanger his life or to materially affect the risk upon his life or to materially bring discredit upon the Order, an investigation should be made and, if the charge was found to be true, the offending member should be suspended.

Various officers of the local society testified, and it appeared from their evidence that they knew, that Vail drank liquor to some extent or they had smelled it upon his breath. They never caused such an investigation to be made, but took dues from him to the end of his life. The officer who received the dues knew that he drank to some extent. The fact that the Order did not suspend him or conduct an investigation, but continued to receive his dues, tends to show that its officers did not consider that he had obtained his membership by false statements or was drinking to an extent which endangered the risk.

The laws of the Order provided that any member who shall use intoxicating liquor to such excess as

to endanger his life or to materially affect the risk on his life shall forfeit all benefits from the society, and if his death is caused by or due directly or indirectly to such use of intoxicating liquors, all claims which his beneficiaries might otherwise have had upon the Order shall be null and void. Defendant claims that the death of Vail was due to alcoholism and that by reason thereof plaintiff cannot recover, and also that that fact is conclusively established by the affidavit of the attending physician, filed with the proofs of death. The proofs of death were upon forms provided by the society for that purpose and, among other things, the society required answers to numerous interrogatories by the attending physician. In his certificate that physician stated that the remote cause of the death of Vail and predisposing cause was gastritis and passive congestion of the lungs. He was asked if there was any special cause, direct or indirect, for the death in the habits, occupation or residence of the deceased and he answered "Alcoholism." He was asked if deceased used alcoholic beverages of any kind and he answered "Yes." He was asked: "If so, to what extent?" and he answered, "Drinks whiskey, sometimes to excess; not a steady drinker; periodical; sometimes months without drinking." He was asked: "With what effect?" He answered, "As stated," with a reference following to the answer about his drinking whisky. On another form, furnished and required by the society, Mrs. Vail was made to say that these proofs of death had been executed at her special instance and request and that the statements therein contained were adopted by her and agreed to as the basis of the claim. The sworn statement by the physician was competent evidence for the defendant. The physician was not called as a witness. The only times when he ever saw deceased, so far as that statement shows, were from February 12 to February 15, 1913, and Vail died on February 16, 1913. He gave both

the immediate cause and the remote cause of Vail's death as gastritis and passive congestion of the lungs. There is nothing to show that he had ever seen Vail at any other time. His statement as to the habits of Vail may have been based upon his own knowledge or it may have been obtained from inquiry which he made of others to enable him to answer these questions. To what extent alcoholism was the special cause of his death and whether it was the direct or indirect cause is not revealed. No opportunity was offered plaintiff to cross-examine him and ascertain the grounds of his conclusions. In order to avoid the certificate on the grounds above stated, it must appear that his death was caused directly or indirectly by such use of intoxicating liquors as endangered his life or materially affected the risk upon his life. The affidavit of the physician did not state that deceased had made such a use of intoxicating liquors. It is obvious that plaintiff, in stating that the various affidavits connected with the proofs of death had been executed at her instance and that she adopted the statements therein as the basis of her claim, did not mean to waive her claim upon this policy. If she meant that she thereby conceded that this policy was void, she would not have executed any proofs of death at all. She was attempting to assert a valid claim, and we think she should not be conclusively defeated by the affidavit of the physician merely because of the printed words which the society required her to sign in order to present a claim. We think that the language of Mrs. Vail in these printed forms furnished by the society, and by no means decisive against her, should be liberally construed in her favor under the familiar principles referred to in *Zeman v. North American Union*, 263 Ill. 304. There was no other direct proof that Vail died of alcoholism. Other physicians testified for defendant that gastritis and passive congestion of the lungs were attributable to various causes and, among

others, to alcoholism. There was positive proof that for three months and more before his death, and while he was able to be about and at work, he drank no intoxicating liquors, and that his death was caused by pneumonia, preceded by a hard cold.

The jury decided these issues for the plaintiff. The trial judge, who saw the witnesses and heard them testify, approved those findings. We are unable to say that the jury should have found the other way or that the trial judge should have granted a new trial.

The judgment is therefore affirmed.

*Affirmed.*